| | | | |
|---|---|---|---|
| | AUSA: Julie Beck | Telephone: | (313) 226-9717 |
| AO 91 (Rev. 11/11) Criminal Complaint | Agent: Bradley Cioma | Telephone: | (313) 965-2323 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
v.
Matthew Byrd

Case: 2:19-mj-30639
Judge: Unassigned,
Filed: 12-06-2019 At 09:49 AM
USA v. SEALED MATTER(CMP)(MLW)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 20, 2019 - November 20, 2019__ in the county of __Wayne__ in the __Eastern__ District of __Michigan - SD__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1), (b)(1)(C) and 846. | Distribution of Controlled Substances resulting in serious bodily injury or death; Possession With Intent to Distribute Controlled Substances & Conspiracy to Possess with Intent to Distribute Controlled Substances. |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☐ Continued on the attached sheet.

_____
Complainant's signature

Bradley Cioma, Special Agent, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: December 6, 2019 ~~September 12, 2019~~

City and state: Detroit, Michigan

_____
Judge's signature

Honorable Anthony Patti, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Bradley Cioma, being first duly sworn, hereby depose and state as follows:

### Introduction and Background

1. I am a Special Agent with the FBI, and have been since May of 2017. I am assigned currently to the FBI Detroit Division's Violent Crime Task Force ("VCTF"). Prior to working at the FBI, I was a police officer for six years in Plymouth Township, Michigan. I have conducted dozens of investigations of federal and state violations, including crimes of violence, firearms, and drug trafficking. I have gained experience through training and everyday work related experience in these types of investigations.

2. The statements contained in this Affidavit are based on my experience and background as a special agent and on information provided by police officers, other agents of the FBI, and other law enforcement personnel, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through training and experience.

3. This affidavit is made in support of a criminal complaint against Matthew Fahrod BYRD for violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), Distribution of Controlled Substances Resulting in Serious Bodily Injury or Death; 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute Controlled Substances;

and 21 U.S.C. § 846, Conspiracy to Possess with Intent to Distribute Controlled Substances.

4. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all the information known to law enforcement related to this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that BYRD violated 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(C), and 846.

5. From about ~~October 20~~ *Mid November* B.C., 2019, through and including November 20, 2019, VCTF used fixed surveillance in the area of 3343-3345 Hogarth Street, Detroit, Michigan. The fixed surveillance observed frequent foot traffic by pedestrians walking up to the residence, knocking on the front door, waiting a short amount of time, conversing with someone at the front door, continuing to wait and then leaving after conversing with someone who answered the front door and only opened it a crack. This is consistent with physical surveillance observations by VCTF, and it is consistent with drug trafficking.

6. On November 20, 2019 a Source of Information (SOI) contacted a VCTF member and advised that victim DR had just purchased illegal narcotics from 3343-3345 Hogarth Street and overdosed. SOI advised that the Detroit Police Department and local ambulances were on scene at 3269 Hogarth Street, Detroit, Michigan, which is approximately six houses away from 3343-3345 Hogarth

Street. VCTF members confirmed this information with the Detroit Police Department and discovered that DR was pronounced dead with an initial cause of death being an overdose of illegal narcotics at approximately 4:30 pm.

7. VCTF members reviewed the fixed surveillance on 3343-3345 Hogarth Street and observed a male riding a bicycle go up to the residence at approximately 3:52 pm, set his bicycle down and walk onto the front porch of the residence. The male was on the front porch for approximately a couple of minutes and appeared to converse with someone at the front door; the front door was seen opening and closing. The male then left the front porch, got on his bicycle and rode down Hogarth Street at approximately 3:55 pm. A still image of this male riding the bicycle and walking up to the house was shown to SOI. SOI confirmed that the subject was DR. Furthermore, SOI stated that SOI physically observed DR ride the bicycle up to 3343-3345 Hogarth Street with the intent to purchase illegal narcotics from that location. SOI then observed DR ride the bicycle back from 3343-3345 Hogarth Street to the location where DR was discovered by the Detroit Police Department and the local ambulance. SOI further stated that SOI observed DR injecting illegal narcotics into DR's person after returning from 3343-3345 Hogarth Street at 3269 Hogarth St, Detroit, Michigan.

8. As part of this investigation VCTF members were getting cell phone location information for phone number 313-826-9397 identifying the location of the

cellular device. This cellular device is utilized by BYRD, and is the phone number SOI used to contact BYRD to purchase narcotics as documented in paragraphs 19-24.

9. At the approximate time DR was on the front porch of 3343-3345 Hogarth Street, the cell phone location information for phone number 313-826-9397 showed that the cellular device was in the approximate area of 3343-3345 Hogarth Street.

10. Later that evening, on November 20, 2019 at approximately 7:12 pm, VCTF members executed a search warrant at 3343-3345 Hogarth Street. Prior to making entry into 3343-3345 Hogarth Street, BYRD was observed exiting 3343-3345 Hogarth Street and walking down Hogarth Street. BYRD had an active felony warrant for carrying a concealed weapon. VCTF members made contact with BYRD and placed him in custody for his felony warrant. On BYRD's person was a cellular device whose number was confirmed as 313-826-9397. In addition, on BYRD's person was approximately $2,860.00 in US currency in different denominations.

11. Once the residence was secured, law enforcement officers executed a search and found the following items: approximately $721.00 in US currency in different denominations (predominantly smaller bills), digital scales, white residue on the table in the dining room, approximately seven knotted plastic baggies, later verified to contain illegal narcotics, sitting on the dining room table, two cellular

phones, approximately five bullets, and numerous proof of residency documents with Matthew BYRD's name on them.

12. Lab results verify that cocaine residue was on the digital scales. Lab results further verify that the seven knotted plastic baggies contained fentanyl and heroin.

13. As part of the investigation, law enforcement officers conducted physical surveillance at 3343-3345 Hogarth Street in October of 2019. Specifically, on October 21, 2019, in a 20-minute timeframe, officers observed several different individuals arrive at the location in vehicles or on foot, go up to the front door, knock, put their hands through a slim opening in the doorway, exit the porch and leave. This activity is consistent with drug transactions. One of the individuals observed appeared to be BYRD, who exited Hogarth and re-entered shortly thereafter.

14. VCTF also arranged for two controlled purchases from 3343-3345 Hogarth Street in October of 2019 through SOI. SOI is a reliable source who maintains excellent access with VCTF members as well as the subjects with whom he is interacting for the controlled buys, and whose reporting has been previously corroborated.

15. Controlled Buy 1: During the fourth week of October 2019 at approximately 11:00 am, members of the VCTF and SOI conducted a controlled

purchase of crack cocaine from BYRD. VCTF members met with SOI at a pre-arranged location and issued SOI a recording device. SOI was searched by VCTF members for contraband with negative results. In the presence of VCTF members, SOI contacted BYRD at 313-826-9397 to arrange to meet with BYRD at 3343-3345 Hogarth Street, to purchase approximately five grams of crack cocaine from BYRD. BYRD requested that SOI meet him at a pre-arranged location nearby.

16. Prior to SOI making contact with BYRD, VCTF members were on surveillance in the area of 3343-3345 Hogarth Street and observed BYRD exit and re-enter 3343-3345 Hogarth Street.

17. SOI was given $360.00 in pre-recorded government funds and was observed by VCTF members approaching the area of the pre-arranged location where SOI met with BYRD. SOI purchased approximately six grams of crack cocaine from BYRD. Members of the VCTF were monitoring the audio of the purchase remotely as it was happening. SOI and BYRD were then observed by members of the VCTF exiting the pre-arranged location.

18. VCTF members conducted surveillance on 3343-3345 Hogarth Street prior to and after the controlled purchase by SOI. VCTF members observed several individuals approach 3343-3345 Hogarth Street on foot or in vehicles, stay for a short period of time and exit the property.

19.     Controlled Buy 2: During the fifth week of October 2019 at approximately 9:30 am, members of the VCTF and a SOI conducted a controlled purchase of crack cocaine from 3343-3345 Hogarth Street. VCTF members followed the same protocol described for the first controlled purchase.

20.     SOI was given $180.00 in pre-recorded government funds. SOI approached the front door and knocked. A male answered the door, took SOI's money, closed the front door and moments later handed SOI 2.2 grams of crack cocaine.

21.     The subject took SOI's money, closed the front door and moments later handed SOI 2.2 grams of crack cocaine. During the purchase the following addresses, 3345 and 3343, were visible on the left and right sides of the front door to 3343-3345 Hogarth Street.

### BYRD's Criminal History

22.     BYRD has the following felony convictions on his record:

- May 2001 - Felony – Armed Robbery (three counts)
- May 2001 - Felony – Felony Firearm
- May 2001 – Felony – Felony Firearm
- May 2001 – Felony – Armed Robbery (two counts)
- August 2014 – Felony – Breaking and Entering a Building (two counts)
- August 2014 – Felony – Possession of Burglary Tools
- April 2017 – Felony – Carrying Concealed Weapon Habitual Offender

(Pled NOLO CONTD)

23. BYRD had the following active Felony Warrant:

- Carrying a Concealed Weapon, Wayne County Sheriff's Office 3rd Circuit Court, No Bond

24. Based on the above information, probable cause exists to believe that Matthew Fahrod BYRD, violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), Distribution of Controlled Substances Resulting in Serious Bodily Injury or Death; 21 U.S.C. § 841(a)(1); Possession with Intent to Distribute Controlled Substances; and 21 U.S.C. § 846, Conspiracy to Possess with Intent to Distribute Controlled Substances.

Bradley Cioma
Special Agent, FBI

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Honorable Anthony P. Patti
United States Magistrate Judge

Dated: December 6, 2019